IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Select Specialty Hospital -
Columbus Grant, Inc.**

   **Plaintiff,**

v.          **CASE NO. 2:05-CV-1093
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE KEMP**

**Pactiv Corp. Master Health
and Welfare Plan, #531, et al.,**

   **Defendants.**

### OPINION AND ORDER

   This matter is again before the Court for consideration of the parties' Cross-Motions for Judgment on the Administrative Record, following additional briefing ordered by the Court. (Docs. 17, 18, 26-32.) This Court previously granted in part and denied in part both parties' motions, remanding the action and directing the Administrator, Defendant Pactiv Corporation ("Pactiv"), of Defendant Pactiv Corporation Master Health and Welfare Plan #531 ("the Plan"), to issue a decision on Plaintiff Select Specialty Hospital-Columbus Grant, Inc.'s ("Select") claim for benefits in accordance with the terms of the Plan. (Order, Doc. 25.) The Court retained jurisdiction to insure compliance with its Order. Pactiv amended its decision, again denying Select's appeal for additional benefits under the Plan. (Doc. 26.) Plaintiff Select responded by filing Objections to Defendants' Amended Denial and Request for Entry of Judgment Consistent with the September 18, 2007 Opinion and Order (Doc. 28), and the parties

have fully briefed the issues raised by Pactiv's denial of Select's claim.[1] (Docs. 28-32.)

## I.

The facts giving rise to this case and the standard of review applicable to Pactiv's denial of Select's claim for benefits under ERISA, 29 U.S.C. Sec. 1001, *et seq.*, are set out in the Court's September 18, 2007 Opinion and Order, and will not be repeated in full herein.

Considering Select's claim for payment of benefits in the amount of $375,936.79, and Pactiv's denial of the claim for all but $67,032, the Court held:

> As the record stands, the Court cannot conclude that the Defendants have offered a reasoned explanation for the denial of benefits to Plaintiff. The Court will, however, remand this action in order for Defendant to articulate how Plaintiff's requested payment of $375,936.79 fails to satisfy the UCR[2] standard. Defendant shall issue a decision in conformity with the Plan, detailing its conclusion, with more than conclusory, unsupported statements, to Plaintiff within forty five (45) days of the date of this Order.

(Order at 10.) The Court found the minimal explanation accompanying Pactiv's initial denials of Select's claim lacking in factual support, and apparently "inconsistent with the standard set out in the Plan." (Id. at 9-10.) While recognizing that Pactiv, the Plan Administrator, had discretion to interpret the Plan, and that a "reasoned explanation" for a benefit decision will survive the arbitrary and capricious standard of review, the Court declined to show "abject deference" to the

---

[1] Defendants' Motion to Strike Plaintiff's Reply Memorandum or, in the Alternative, for Leave to File Sur-Reply Instanter is also before the Court. (Doc. 31.) Plaintiff does not oppose the Defendants' Motion to File a Sur-Reply, and the Court will consider the issues addressed in all of the memoranda filed by the parties. Accordingly, Defendants' Motion to File Sur-Reply Instanter is hereby **GRANTED**, and the Motion to Strike Plaintiff's Reply Memorandum is **DENIED**.

[2] "UCR" refers to the Plan's "usual, customary, and reasonable" standard for medical services. If a claim fails to satisfy the UCR standard, the Plan will not pay the claim. The Plan definitions of "usual, customary, and reasonable" are addressed in the Court's September 18, 2007 Opinion and Order.

Plan Administrator's decision which essentially included no analysis other than its own representations that its review process was fair.

## II.

On November 2, 2007, Defendants filed an amended decision, wherein Pactiv again denied Select's claim for benefits under the Plan. (Doc. 26-2.) Pactiv's decision incorporates much of a November 1, 2007 letter from the Claims Administrator, Blue Cross/Blue Shield of Illinois ("BCBS"), explaining how BCBS processes claims generally, and Select's claim specifically. (Doc. 26-2, Exhibit 1.) Select objects to the decision, asserting that the denial letter is "based upon the same methodology the Court had just rejected in the Order . . . [and] long on assertions but largely devoid of facts or data."

Select's primary objection at all stages of the claims process has been that Pactiv utilized diagnostic codes in determining what amount to pay for medical services rendered by Select in treatment of a patient insured under the Plan. Select continues to object to Pactiv's explanation of how the use of codes is consistent with UCR, maintaining that the Plan does not authorize or contemplate consideration of diagnostic codes. Specifically, Select argues that Pactiv used a methodology "inconsistent with the UCR methodology expressly called for in the Plan terms."

Pactiv's seven-page amended decision explains at some length the use of diagnosis codes as an element of its UCR analysis. The letters from both Pactiv and BCBS first explain that diagnosis codes are "one component of a way to categorize inpatient hospital services based on diagnosis, comorbidities that impact a participant's treatment, major procedures, gender . . ., and age. . . ." (BCBS Letter at 2.) Second, Pactiv claims that its

3

consideration of diagnosis codes is consistent with UCR, and in keeping with the standard practice of Medicare, Medicaid, and other major claims administrators. (Id.) Third, in addition to considering nine diagnosis and six procedure codes, Pactiv states that BCBS calculated Select's claim by entering the patient's category of service (inpatient), admission date (January 16, 2004), zip code (152), gender (male), age (61), into its pricing tool. (Id. at 3-4.) Fourth, Pactiv represents that it follows this procedure and methodology when calculating the UCR allowable amount for all out-of-network claims, when pricing is not set by contract. (Id. at 3.) Line-by-line charges submitted by the provider are not necessarily considered because of disparities in fees charged by different providers. (Id. at 2.) Last, Pactiv states that "no additional information exists" to further illuminate its claim processing. (Id. at 4.)

### III.

As set out in the Court's September 18, 2007 Order, if a group benefit plan vests discretion in the plan administrator to determine eligibility for benefits or to construe the terms of the plan, the administrator's decision is reviewed under the deferential arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998); *Perry v. United Food & Comm'l Workers Dist.*, 64 F.3d 238, 242 (6th Cir. 1995).

The Pactiv Plan grants to the administrator, Defendant Pactiv, discretion both to interpret the Plan and to determine eligibility for benefits. Select concedes that the Court reviews Pactiv's amended decision denying Select's claim under the arbitrary and capricious standard of review.

"When it is possible to offer a reasoned explanation, based on the evidence, for a

4

particular outcome, that outcome is not arbitrary or capricious." *Perry*, 64 F.3d at 242. If Pactiv's decision "is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence" it must be upheld. *Evans v. Unum Provident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).

Select relies upon the facts of *Geddes v. United Staffing Alliance Employee Med. Plan* as an example of an "unreasonable" application of UCR. 2005 U.S. Dist. LEXIS 4758, 34 Employee Benefits Cas. (BNA) 2691 (D. Utah Mar. 23, 2005). In *Geddes*, the plan administrator interpreted "the 'usual and customary' clause to mean payment at discounted in-network rates rather than what most insurance companies interpret it to mean (amounts determined by comparing similar services in an applicable geographic area)." *Id.* The district court found such a practice to be an "unreasonable" application of the UCR methodology. On review, the Tenth Circuit Court of Appeals agreed, and analyzed the "arbitrary and capricious" standard of review as follows:

> Under the arbitrary and capricious standard, our inquiry is limited to determining whether the plan administrator's interpretation of the ambiguous language was "reasonable and made in good faith." *Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (quoting *Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1213 (10th Cir. 2002)). We will not substitute our own judgment for that of the plan administrator unless the administrator's actions are without any reasonable basis. *Woolsey v. Marion Lab.*, 934 F.2d 1452, 1460 (10th Cir. 1991); Restatement (Second) Trusts 187 cmt. e. We ask four questions derived from the principles of trust law: (1) Is the interpretation the result of a reasoned and principled process? (2) Is it consistent with any prior interpretations by the plan administrator? (3) Is it reasonable in light of any external standards? And (4) is it consistent with the purposes of the plan? *Fought*, 379 F.3d at 1003; Restatement (Second) Trusts 187 cmt. d (1959). We answer these queries based on the administrative record. *Hall*, 300 F.3d at 1201.

*Geddes v. United Staffing Alliance Employee Med. Plan*, 469 F.3d 919, 929 (10th Cir. Utah

5

2006), *petition for cert. filed*, 75 U.S.L.W. 3610 (May 2, 2007) (No. 06-1458).[3]

The Court's initial ruling found that Pactiv had not provided a reasoned explanation for how the consideration of diagnosis codes complied with the UCR methodology required by the Plan. The Court did not, however, go so far as Select suggests and "reject" Pactiv's methodology. (Objections, Doc. 28 at 1.) Instead, the Court ordered Pactiv to provide a reasoned explanation for its denial of Select's claim for benefits.

In response, as set out above, Pactiv explained BCBS's mechanical process of UCR evaluation, and identified how Select's claim failed to satisfy the Plan's UCR standard. Pactiv provided additional indicia of reasonableness, drawing comparisons to other claims paid under the Plan, and concluding that the percentage paid to Select "is consistent with the aggregate average paid on medical claims under the Plan." Pactiv concluded that Select's claim did not satisfy the UCR standard because, based on all of the information available to Pactiv and BCBS, the claimed amount was "well out-of-line with fees regularly charged by providers in the same geographic area for claims associated with the relevant category of service, admission date, zip, gender, age, diagnoses, and procedures."

Although Select argues that by considering diagnosis codes, Pactiv has re-written the Plan, the Plan itself does not prohibit the use of codes. Nor does the Plan require that claims be processed taking into account the length of a patient's stay, or by individually analyzing the reasonableness of each charge. Instead, the UCR methodology required by the Plan contemplates

---

[3]   The Tenth Circuit Court of Appeals also reversed the decision of the district court, in part, holding that ERISA does not prohibit the plan administrator from delegating administrative claims processing to a non-fiduciary third party, and such a delegation does not waive the right to deferential review.

6

that Pactiv has discretion to determine what fees are "usual", "customary" and "reasonable."

The Court finds, based upon Pactiv's amended denial, that Pactiv's decision is "the result of a reasoned and principled process"; "consistent with [Pactiv's] prior interpretations"; "reasonable in light of . . . external standards" such as those considered by BCBS, and "consistent with the purposes of the plan." *Geddes,* 469 F.3d at 929.

## IV.

The Court finds that Pactiv's amended decision contains a reasoned explanation for its denial of Select's claim for benefits over and above the UCR allowable amount, and is consistent with Pactiv's discretionary authority to interpret the Plan and to determine eligibility for benefits. For these reasons, the Court hereby **GRANTS** Defendants' Motion for Judgment on the Administrative Record (Doc. 18); **DENIES** Plaintiff's Motion for Judgment on the Administrative Record (Doc. 17), and **DENIES** Plaintiff's Objections to Defendants' Amended Denial and Request for Entry of Judgment Consistent with the September 18, 2007 Opinion and Order (Doc. 28). The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendants.

**IT IS SO ORDERED.**

6-10-2008
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE